## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE

**CHARLES E. CHESTER, JR.**                                                     **PLAINTIFF**

**v.**                                                 **CIVIL ACTION NO. 3:06-CV-P508-H**

**OFFICER W. COGBURN**                                                  **DEFENDANT**

### MEMORANDUM OPINION

The plaintiff, Charles E. Chester, Jr., filed a *pro se, in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 (DN 1). This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

### I. SUMMARY OF CLAIMS

The plaintiff, who is a pretrial detainee, alleges that the defendant, Officer W. Cogburn at the Jefferson County Jail,[1] and his partner, Officer Stinson, abused him sexually and mentally and refused to give him his proper medication for two weeks while on the medical floor of the jail.[2] He alleges that his constitutional rights were violated because the staff did not listen to him and did not give him his medication for "A.D.H.D." and "S.L.D.H.D.A.D.E.H.S." He further alleges that, because he was not given his medication, he was strip searched two times at 1:00 or 2:00 a.m. by Officers Cogburn and Stinson. He alleges that those officers told him not to say anything, sexually assaulted him, and told him to perform sexual acts on them. He further

---

[1] Since the merger of the Louisville and Jefferson County governments on January 6, 2003, *see* Official Guide to Louisville Metro Government at http://www.loukymetro.org, the Jefferson County Corrections Department is now the Louisville Metro Department of Corrections ("Metro Corrections").

[2] At the time the plaintiff filed his complaint, he was incarcerated at the Kentucky Correctional Psychiatric Center, ("K.C.P.C."). However, it appears that the plaintiff has since been returned to Metro Corrections.

alleges that when he refused, the officers pulled him out of "medical dorm #9." He also appears to allege that two black inmates were receiving favorable treatment from the defendant. After the plaintiff told the inmates that special treatment from the defendant did not "make you any better," the plaintiff became involved in a fracas, causing the defendant to come running into the dorm and tackle the plaintiff, hurting the plaintiff's back. Then, according to the plaintiff, the defendant blamed him for hurting his knee. The plaintiff requests punitive damages of $11,670 and also requests $1,700 in other damages for funds that he paid his attorney to fight the defendant's "added charges."

The plaintiff attaches to his complaint a January 27, 2006, grievance, which stated that he was going to court on February 3, 2006, to ask the judge to issue a protective order for him and to press charges against the defendant and Officer Stinson for taking him to a single cell, having him take his clothes off, trying to make him perform sexual acts on them, and telling him that, if he did not, there would be problems for him. He further stated in that grievance that there were two black inmates who were being paid to start trouble with him. He also stated that he had been too embarrassed to say anything but the officers had charged him with battery. He further stated that when he asked for a "blue mat" for his back, the officers told him no. The response to that grievance stated that due to the seriousness of the allegations, the complaint had been turned over to the Professional Standards Unit for an internal investigation.

The plaintiff also attaches two letters dated September 3, 2006. The first states that the plaintiff was "still being intimidated by correction officers," asserting that he was not let out of his cell until the evening of September 2, 2006, even though the other inmates were let out earlier in the day. The other letter appears to be a typed copy of what he had included in his

January grievance.

## II. <u>ANALYSIS</u>

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted "only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), a plaintiff is required to plead more than bare legal conclusions. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996). Therefore, the "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Id.* (internal quotation marks and citations omitted).

3

*Official Capacity Claims*

The plaintiff appears to sue the defendant in his individual and official capacity. If an action is brought against an official of a governmental entity in his official capacity, the suit should be construed as brought against the governmental entity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, in the case at bar, the plaintiff's claims against an employee of Metro Corrections in his official capacities is actually brought against the Louisville Metro government. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

When a § 1983 claim is made against a municipality, a court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The Court will address the issues in reverse order.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis in original); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in *Pembaur*).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional

4

deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery County, Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds*, *Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that plaintiff must demonstrate "deliberate conduct").

In the instant case, the plaintiff has failed to allege the existence of a governmental policy or custom relative to the nature of his complaints and claims. Consequently, the Court will dismiss those claims against the defendant in his official capacity for monetary damages in a separate order.

### III. CONCLUSION

The Court will enter a separate order dismissing all claims for monetary damages against the defendant in his official capacity. The Court also will enter a separate scheduling order governing the remaining claims, *i.e.*, the plaintiff's claims for delayed or denied medical treatment, sexual abuse, and retaliation, which the Court will allow to go forward. In permitting

the remaining claims to go forward, the Court passes no judgment on the merits or ultimate outcome of this case.

Date:


cc:      Plaintiff, *pro se*
            Defendant
            Jefferson County Attorney

4412.009